(623 P.2d 516)

No. 51,634

STATE OF KANSAS, *Appellant,* v. PHILLIP R. PARKS, *Appellee.*

Opinion filed January 23, 1981.

*Joseph L. McCarville, III,* assistant county attorney, *Robert T. Stephan,* attorney general, and *Joseph O'Sullivan,* county attorney, for the appellant.

*James Z. Hernandez,* of Woodard, Blaylock, Hernandez, Pilgreen & Roth, of Wichita, for the appellee.

Before FOTH, C.J., MEYER, J., and HARRY G. MILLER, District Judge Retired, sitting by designation.

MILLER, J.: The State has appealed from a ruling of the trial court suppressing the defendant's statement given to law enforcement officers.

The issues presented are basically factual; namely, whether there was substantial evidence to support the trial court's ruling, and in this perspective, we have reviewed the record on appeal.

The evidence was that on the morning of June 16, 1978, Mary Jackson, a next-door neighbor of the defendant and his wife

Rachel, arose around 6:00 a.m. While working around the kitchen, Mary observed the defendant leave in his pickup truck, and sometime later, observed water coming from the garage of the defendant's home. Believing no one was at home, she called the defendant's father who came to the house and discovered Rachel's body in the bathtub with the water running, apparently drowned. The sheriff's office and an ambulance were called. Rachel was taken to the hospital where efforts at resuscitation were unsuccessful. Later the same morning, defendant gave a statement to officers of the Reno County Sheriff's Department.

The defendant was subsequently bound over for trial on a charge of murder. At a pretrial hearing, however, the trial court ruled that the defendant's statement was the product of an illegal detention in violation of the Fourth Amendment to the United States Constitution, and defendant's motion to suppress the statement was sustained on the basis of *Dunaway v. New York,* 442 U.S. 200, 60 L.Ed.2d 824, 99 S.Ct. 2248 (1979). The State brings this appeal.

The defendant does not question the voluntariness of his statement. It is not disputed that he was given a proper *Miranda* warning and that he voluntarily gave his statement. Specifically, the issue in this appeal is whether the defendant was seized or detained without probable cause, in violation of the Fourth Amendment, so as to require that his statement to law enforcement officers be suppressed.

The burden of proof is upon the State to show the admissibility of the statement in a motion to suppress (K.S.A. 22-3215[4]), and if there is substantial evidence to support the trial court's ruling, it will not be disturbed on appeal. *State v. Chiles,* 226 Kan. 140, 595 P.2d 1130 (1979).

The State first contends that defendant was not seized or detained involuntarily, but that he voluntarily came to the sheriff's office for questioning.

A "seizure" occurs when a law enforcement officer, by show of authority or by physical force, inhibits a person's liberty to the extent that he is not free to walk away. *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968). In a limited number of cases an officer may make a carefully circumscribed seizure based on reasonable suspicion that a crime has been or is likely to be committed, but this ordinarily is restricted to asking the person a

few pertinent questions on the scene and conducting a pat-down search for weapons. Any involuntary detention exceeding this *Terry*-type stop and frisk procedure constitutes a seizure, and to be lawful must be based upon probable cause. If not based on probable cause, it is in violation of Fourth Amendment rights, and statements subsequently made to the police by the person detained must be suppressed unless it can be shown that some intervening event has broken or attenuated the connection between the detention and the statement. *Dunaway v. New York,* 442 U.S. 200.

In this case the evidence was that Detective Loren Beshore, the lead detective in the investigation, and Detective Bayless were dispatched to the scene. After a short preliminary investigation, Beshore directed Bayless to find the defendant and "[b]ring him downtown to talk about the death of his wife." Bayless found the defendant at the hospital and told him he was needed downtown to discuss what had happened and "that I would like for him to accompany me." Defendant asked if he could drive his truck downtown but was told by Bayless "that he could ride with me and that we would take care of getting the vehicle to him." Defendant then got in the officer's car and was driven directly to the Law Enforcement Center where they met Detective Beshore. Interrogation commenced at 8:20 a.m.

Detective Bayless was asked by defense counsel if he would have let the defendant go if the defendant had stated he did not want to accompany him. His answer was that he did not know, but that he probably would have consulted with Detective Beshore or the county attorney. To a similar question, Beshore stated that defendant could have left if he had requested. However, when defendant asked to use a phone to call an attorney, Beshore took him to the county attorney's office to make the call, although there was a phone in the room. Apparently because the county attorney was not in, they returned to Beshore's office where Beshore dialed a telephone number given to him by the defendant. Defendant was not told that he was free to leave until 11:00 a.m. after the interrogation was completed.

Our review of the record discloses that there was substantial evidence to support the trial court's conclusion that defendant was not free to walk away but was, in fact, in custody.

Secondly, the State contends that even if there was a seizure, there was probable cause to take defendant into custody.

Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed by the person to be arrested. *Brinegar v. United States,* 338 U.S. 160, 93 L.Ed. 1879, 69 S.Ct. 1302 (1949); *State v. Lamb,* 209 Kan. 453, 497 P.2d 275 (1972). It is more than a suspicion. *State v. Morgan,* 222 Kan. 149, 563 P.2d 1056 (1977). When the constitutional validity of an arrest is challenged, it is the function of the court to determine whether the facts within the knowledge of the officers at the moment of arrest and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. *Beck v. Ohio,* 379 U.S. 89, 13 L.Ed.2d 142, 85 S.Ct. 223 (1964).

In the case before us, the testimony was that after Detectives Beshore and Bayless went to the scene they briefly interviewed the defendant's father and Mary Jackson and her husband, who recounted that water was observed coming from defendant's house shortly after the defendant had left and that defendant's father was called and came and discovered the body. The detectives also talked to Jennifer, the defendant's six-year-old daughter, who told them her parents were having "some problems." On the basis of these bits of information, which concededly were not sufficient to constitute probable cause, Beshore ordered Bayless to bring defendant in for questioning. Beshore testified that at the time he began questioning the defendant at 8:20 a.m., he was suspicious but could not say anything beyond that.

The State also presented testimony from county attorney Joseph O'Sullivan that he had interviewed Mary Jackson prior to meeting Beshore and Bayless at the scene that morning, and that he had received additional information which convinced him personally that there was more than sufficient evidence to establish probable cause. The record is clear, however, that if he had such information, he did not communicate it to either detective that morning. There was also evidence strongly suggesting that this additional information was not obtained, in fact, until later in the day after defendant had been questioned.

In establishing probable cause for a warrantless arrest, the

principle applies that among peace officers working together and keeping each other informed, the knowledge of each is the knowledge of all. *State v. Pokini,* 45 Hawaii 295, 311, 367 P.2d 499 (1961). It is not required that the arresting officer have sufficient first-hand knowledge to constitute probable cause. It is enough that the officer initiating the order for arrest had, at the time, either sufficient first-hand knowledge or reasonably trustworthy information received from reliable sources to constitute probable cause. *State v. Clark,* 218 Kan. 726, 544 P.2d 1372, *cert. denied* 426 U.S. 939 (1976).

The record amply supports the trial court's finding in this case that neither Beshore nor Bayless had sufficient information at the time defendant was seized to constitute probable cause, and that his seizure was in violation of the Fourth Amendment. In accordance with *Dunaway v. New York,* 442 U.S. 200, the trial court properly suppressed the defendant's statement.

Affirmed.