(655 P.2d 947)

No. 53,473

STATE OF KANSAS, *Appellee,* v. DANNY A. WALTERS, *Appellant.*

Opinion filed November 12, 1982.

*James S. Phillips, Jr.,* of Phillips & Phillips, Chartered, of Wichita, for appellant.

*Carl Wagner,* assistant district attorney, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before MEYER, P.J., ABBOTT and REES, JJ.

ABBOTT, J.: This is a direct appeal by the defendant, Danny A. Walters, from a conviction of aggravated burglary (K.S.A. 21-3716).

The facts are known to the parties and will not be set forth except as necessary in discussing the issues.

1. Probable Cause for the Arrest.

The defendant argues that his arrest was without probable cause, and that his post-arrest statements should have been excluded at the trial as products of an illegal arrest.

K.S.A. 22-2401(c)(1) provides that a law enforcement officer may make a warrantless arrest if he has probable cause to believe that the person arrested has committed a felony. Probable cause to arrest is the amount of evidence that would lead a reasonable officer to believe an offense had been committed by the person arrested. Evidence sufficient for probable cause need not show that guilt is probable; it need only convince a "reasonable officer that guilt is more than a possibility." *State v. Williams,* 229 Kan. 290, 292, 623 P.2d 1334 (1981).

In an investigation by several police officers, the knowledge of one officer is imputed to the others if there has been some communication between them. The arresting officer need not have sufficient first-hand information to constitute probable cause. It is enough if the police officer initiating the chain of communication either had first-hand knowledge or has received his information from someone who it seems reasonable to believe

is telling the truth. *State v. Niblock,* 230 Kan. 156, 631 P.2d 661 (1981); *State v. Clark,* 218 Kan. 726, 544 P.2d 1372, *cert. denied* 426 U.S. 939 (1976).

In the present case, Otis Welch, a companion of the defendant, informed Detective Warry that the defendant had driven several friends from Gary, Indiana, to Wichita in a blue and white Cadillac. Welch also told the detective that he had gone to the victims' house in a tan Cutlass. The next day, Detective Burnett informed Detective Warry of the substance of statements made by Michael Bradley, an acquaintance of the defendant. At the time of the arrest, then, the police had direct information linking the defendant to Welch as well as to Johnson and Chears (two other traveling companions), and direct information of statements made by defendant to Michael Bradley admitting his involvement in the burglary.

Probable cause may be based upon hearsay. *State v. Niblock,* 230 Kan. at 161. The defendant argues that when an informant is not an eyewitness, probable cause to arrest must be established under the standards of *Aguilar v. Texas,* 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509 (1964).

In *State v. Parks,* 5 Kan. App. 2d 644, 648, 623 P.2d 516 (1981), the court held that either "first-hand knowledge or reasonably trustworthy information received from reliable sources" may constitute probable cause to arrest. This is essentially the two-part test of *Aguilar,* requiring that both the information and the informant appear reliable.

In the present case, there was reason to believe that Michael Bradley's information was trustworthy. The defendant and Bo Johnson had discussed the burglary in Bradley's presence. The statements of the defendant and Johnson, an active participant, indicated that the defendant was involved in the robbery. Bradley's statements described the time, method and object of the burglary, including details likely to be available only to participants.

There was reason to believe Bradley was reliable. Michael Bradley was not a regular police informant, but an ordinary citizen. In *State v. Lamb,* 209 Kan. 453, 466, 497 P.2d 275 (1972), the Supreme Court held that statements of citizen informers are not viewed with such rigid scrutiny as is the testimony of a police informer. The court adopted the rationale of *State v. Paszek,* 50

Wis. 2d 619, 184 N.W.2d 836 (1971), wherein the Wisconsin Supreme Court, noting that police informants often give information in exchange for concessions, payment or for revenge, stated:

"However, an ordinary citizen who reports a crime which has been committed in his presence, or that a crime is being or will be committed, stands on much different ground than a police informer. He is a witness to criminal activity who acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety. He does not expect any gain or concession in exchange for his information. An informer of this type usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied.

.  .  .  .

". . . It would be unreasonable to demand the same showing of prior reliability in the case of such an informer as in the case of a 'traditional police informer.' Rather, the reliability of such a person should be evaluated from the nature of his report, his opportunity to hear and see the matters reported, and the extent to which it can be verified by independent police investigation." 50 Wis. 2d at 630-31.

Although Bradley was neither an eyewitness nor a victim, he heard admissions by the defendant that would be admissible evidence under K.S.A. 60-460(*f*).

Bradley's statements also confirmed much of what the police already knew from the victims and Otis Welch. The accuracy of Bradley's statements also showed his reliability. See *Draper v. United States,* 358 U.S. 307, 3 L.Ed.2d 327, 79 S.Ct. 329 (1959); *State v. Hagan,* 3 Kan. App. 2d 558, 598 P.2d 550 (1979). We are of the opinion that probable cause to arrest the defendant was present.

2. Voluntariness of Statements.

The defendant argues that his statements to the police were not given voluntarily. Defendant received the *Miranda* warning twice and admitted that he understood his rights. His interrogation lasted only forty minutes, and he stated he was not coerced. The defendant did not assert his right to remain silent; instead, he admitted that he let his three friends out of the car "to make a hit" and that he returned later to pick them up. When the defendant completed this brief account, the detectives told him they needed more detail. The defendant argues that when he finished his account of the burglary he was asserting his right to remain silent and that the police could not question him further. The record

shows, however, that the defendant willingly went into more detail. The mere completion of a narrative is not the assertion of the right to remain silent. The circumstances of the interrogation show defendant's statements were voluntary and the trial court properly allowed their admission into evidence. See *State v. Newfield,* 229 Kan. 347, 623 P.2d 1349 (1981).

3. Constitutionality of K.S.A. 21-3716.

Defendant contends that K.S.A. 21-3716 violates due process requirements because it allows for a conviction of aggravated burglary when another person is present within a structure or a means of conveyance of persons or property, even though the burglar has no knowledge that the other person is present. Knowledge of the presence of a person is not necessary to be guilty of aggravated burglary (see *State v. Price,* 215 Kan. 718, 721, 529 P.2d 85 [1974].) K.S.A. 21-3716 does not, as defendant contends, impose strict liability. It requires the same criminal intent that is required under K.S.A. 21-3715 for the lesser offense of burglary.

Although the defendant does not directly challenge the statute on equal protection grounds, his attack on the rationality of a distinction between degrees of an offense.based on the mere presence of a person rather than on intent raises an issue of equal protection rather than due process.

In *State v. Goodseal,* 220 Kan. 487, 553 P.2d 279 (1976), the Supreme Court held that classification of offenses by the legislature does not violate one's rights of equal protection if the classification reasonably relates to the ends sought to be obtained. In *Goodseal,* the court upheld the felony murder rule because the imposition of greater penalties for inherently dangerous felonies was rationally related to the protection of human life.

The same is true of the aggravated burglary statute. There is more danger when a burglar breaks into an occupied building than an unoccupied one. The distinction is rationally related to public safety and does not violate one's rights of equal protection. Defendant's argument concerning due process has no merit.

4. Defendant's Requested Instruction on Mere Association.

The trial court refused to instruct the jury that mere association with persons committing a crime or mere presence in the vicinity of the crime does not constitute aiding and abetting.

The instruction given informed the jury of the intentional acts the State had to prove. It makes clear that more than mere knowledge or presence is required for a conviction. Instructions similar to those given in this case were approved in *State v. Minor,* 229 Kan. 86, 622 P.2d 998 (1981). The trial court did not err in refusing to give the defendant's requested instruction on mere association.

5. Destruction of Evidence.

Detective Warry took notes during defendant's oral statements. He then prepared a report which was later typed. Warry verified that he incorporated the contents of his notes into his report and then destroyed his notes. Defendant requested an instruction to the jury that if a party fails to offer evidence that is within that party's power to produce, the jury could infer that the notes were unfavorable to the prosecution. Defendant relies on civil cases from other states to support his argument. Those cases are not in point. The detective's act in destroying the notes goes to the weight to be given to his report, and based on the record before us defendant was not entitled to an instruction such as the one requested. The notes should have been retained and we do not condone their destruction. The instruction requested, however, does not cover the sins complained of, because it assumed the evidence was in being and available to the State at the time of the trial, and it was not. The requested instruction does not mention the destruction of evidence prior to trial and is inapplicable to the facts before the trial court. The trial court did not err in refusing to give the requested instruction. In any event, the record before us would not support the giving of such an instruction.

6. Withdrawal.

Defendant contends he was entitled to an instruction that he could not be an aider and abettor if he communicated his withdrawal to the others involved in the offense, or if he intended to withdraw and his withdrawal wholly deprived the criminal plan of effectiveness in the commission of the offense.

There are no Kansas cases directly in point. We do note Kansas "borrowed" K.S.A. 21-3205 from Minnesota. Kansas did not adopt subdivision 3 of Minn. Stat. Ann. § 609.05 (West 1964), which provides a defense if the defendant abandons his purpose *and* makes a reasonable effort to prevent the commission of the crime prior to its commission. We express no opinion as to if,

when or how one may withdraw from a crime and escape responsibility therefor, as we are of the opinion the record in this case would not support an instruction concerning withdrawal.

The facts on which defendant relies for the instruction emanate from the testimony of Bradford Johnson, one of the participants in the crime. Johnson testified the defendant drove Johnson and two other participants to the general area where the crimes were committed. Johnson denied defendant knew they were going to commit a crime at that time. Johnson did testify defendant told him to tell the other two he would not return to pick them up. Defendant testified he did not know that the others intended to commit a crime when he took them to the area, and that he did not return for them. The State's evidence was that defendant knew a crime would be committed, and he returned to pick the others up but left because the police had arrived at the scene. Neither Johnson nor defendant testified defendant withdrew or that the other two participants were told defendant had stated he would not be back. The facts are totally inconsistent with a withdrawal defense and the trial court did not err in refusing to give the requested instruction. In any event, the requested instruction does not accurately state the defense of withdrawal.

7. Sufficiency of the Evidence.

In *State v. Douglas,* 230 Kan. 744, 745-46, 640 P.2d 1259 (1982), the standards for appellate review of sufficiency of evidence are stated as follows:

"When the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. . . .

". . . The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Racey,* 225 Kan. 404, 407, 590 P.2d 1064 (1979). It is not the function of the appellate court to reweigh the evidence or to pass upon the credibility of witnesses."

There was uncontradicted evidence that a burglary occurred while the victims were at their home. The defendant admitted to the police that he knew the plan, drove Welch, Johnson and Chears to the house, and attempted to pick them up afterwards. The defendant testified to a different version of events, but the choice of which version to believe was for the jury. There was

substantial competent evidence from which a rational factfinder could have concluded there was no reasonable doubt as to defendant's guilt.

8. Inconsistent Verdicts.

The defendant argues that his conviction of aggravated burglary should be reversed because it is inconsistent with acquittal of aggravated kidnapping and aggravated robbery. In *Dunn v. United States,* 284 U.S. 390, 393-94, 76 L.Ed. 356, 52 S.Ct. 189 (1932), the United States Supreme Court held that:

" 'Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. . . .

. . . . .

" 'That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.' "

Kansas follows *Dunn.* See *State v. McCorgary,* 218 Kan. 358, 366, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867 (1976); *State v. Ogden,* 210 Kan. 510, 502 P.2d 654 (1972); *State v. Freeman,* 198 Kan. 301, 304, 424 P.2d 261 (1967).

9. Cross-Examination.

The scope of cross-examination is within the discretion of the trial court. Unless there is an abuse of discretion, there is no reversible error. *State v. Carr,* 230 Kan. 322, 634 P.2d 1104 (1981). In *State v. Laughlin,* 216 Kan. 54, 55-56, 530 P.2d 1220 (1975), the Supreme Court stated that "cross-examination of a witness must be limited to the testimony of matters raised on direct examination, or matters relevant thereto."

Johnson's testimony on direct examination supported the defendant's theory that he had no knowledge of the burglary. The defendant's interactions with Johnson before and after the burglary are relevant to the issue of the defendant's knowledge of the burglary. The trial court did not abuse its discretion in permitting the State to cross-examine Johnson in the manner and to the extent it permitted.

10. Order of Commitment.

Defendant contends the trial court erred in not specifying in its order of commitment that the defendant was an aider and abettor. Defendant relies on K.S.A. 1979 Supp. 21-4603(3). The 1980 legislature deleted that requirement from 21-4603(3), but makes the same requirement in K.S.A. 21-4620(*a*)(2)(C). Thus, the trial court should have noted in its journal entry of judgment that the

defendant was convicted by reason of aiding, abetting, advising or counseling others to commit aggravated burglary. That oversight is to be corrected by filing an amended journal entry of conviction and furnishing certified copies to the appropriate parties.

11. K.S.A. 21-4606(2) Factors.

The trial court imposed the maximum sentence of five to twenty years permitted by K.S.A. 21-4501(*c*) for a class C felony. A sentence within statutory limits will be set aside only if it is so unreasonable that it constitutes an abuse of discretion. *State v. Coe,* 223 Kan. 153, 167, 574 P.2d 929 (1977).

The Supreme Court in *State v. Buckner,* 223 Kan. 138, 574 P.2d 918 (1977), held that trial courts must consider the factors set out in K.S.A. 21-4606. The court stated:

"Although the statute may not require it, we feel that when the sentence exceeds the minimum, it is better practice for the trial court to make, as part of the record, a detailed statement of the facts and factors considered by the court in imposing sentence. Such a record would be of great assistance to the appellate courts in determining whether the trial court has abused its discretion." 223 Kan. at 151.

The record before us does not state all the facts and factors considered by the court in imposing sentence. The trial court obviously considered the fact that defendant was convicted of aggravated burglary; that he transported two persons who were carrying handguns and one who was carrying a sawed-off shotgun to the scene of the crime, and that those persons who defendant transported and arranged to pick up terrorized and physically and mentally harmed the occupants of the house they burglarized. Defendant obviously was concerned that his cohorts were prone to violence, as he expressed concern that they might have killed someone. Obviously the trial judge could have, and should have, expressed himself in greater detail as to why he imposed more than the minimum sentence. We do not, however, believe the record before us justifies a finding that the trial judge abused his discretion or so failed to set forth his reasons for imposing the maximum sentence that we are prevented from adequately reviewing the question of abuse of discretion. We do not construe the trial court's comments concerning the class B crimes defendant was acquitted of to mean the trial judge impermissibly considered crimes he was acquitted of when sentencing defendant. We construe the comments to mean the trial judge was aware of the great danger to the public from the offense that

occurred and of the extent of harm caused by defendant's criminal conduct.

Affirmed with directions.