No. 78,721

STATE OF KANSAS, *Appellee*, v. PHILLIP R. PARKS, *Appellant*.
(962 P.2d 486)

Opinion filed July 10, 1998.

*James Brent Getty*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellant.

*Timothy J. Chambers*, county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Phillip R. Parks appeals from a life sentence for the murder of his wife, Rachel Parks. The court permitted the victim's sister-in-law to submit a victim impact statement and to make a statement at the time of sentencing. The defendant argues that admission of these statements violates both the constitutional and statutory laws of Kansas. He also contends that the inflammatory nature of the statements caused him substantial prejudice. We affirm the defendant's sentence.

On January 24, 1997, the defendant pled no contest to premeditated first-degree murder in the strangulation and drowning death of his wife. The murder occurred on June 16, 1978. By way of explanation, the defendant was originally charged with the murder on June 16, 1978. The defendant's statement given to officers at that time was suppressed by court order. On appeal, the trial court's order of suppression was affirmed. See *State v. Parks*, 5 Kan. App. 2d 644, 623 P.2d 516 (1981). The State dismissed the charge without prejudice on March 6, 1981.

On September 14, 1993, the defendant was charged in New Mexico with the attempted murder of his new wife. He was convicted and received a 12-year prison sentence. During the New Mexico trial, it was revealed that the defendant had stated to his wife that he had to kill her just like he had killed Rachel. Based upon this information, a first-degree murder charge was filed against the defendant in Kansas on April 15, 1996.

The State entered into a plea agreement with the defendant whereby he would plea no contest to the charge of first-degree premeditated murder and the State would agree to recommend that his Kansas sentence run concurrent with his New Mexico sentence. The trial court accepted the defendant's plea.

The State requested that Brenda Perez, sister-in-law of the victim, be permitted to submit a victim impact statement in the presentence investigation (PSI) report and that she be allowed to make a statement at sentencing. The defendant objected on the basis that the Kansas Constitution Victims' Rights Amendment and the statutory bill of rights for victims of crime, K.S.A. 74-7333 *et seq.*, prohibit such statements. The defendant further argued that under the law, a sister-in-law is not a member of the victim's immediate family. The trial court concluded that Perez was a member of the victim's immediate family and granted the State's request.

The PSI report contained the following victim impact statement from Perez:

"Rachel was my best friend as well as my sister-in-law. We shared a bonding together that we could talk to each other & tell each other anything and that would be as far as it went. This is a bonding I wish I have never made because this may be why she's gone today. She swore me to secreatsury [*sic*] not to tell

her brother (my husband) for fear he would go after [the defendant] & be hurt himself or else get into trouble about it.

"It was my oldest son's birthday when she died she was going to come over for his party later on that day. Anthony & Anita (my daughter) was looking forward to her being there. My husband was driving his mom & dad to Wichita to get his dad's retirement started & then they were going by her house to come back to our house with her, but the hiway [sic] patrol told them they had to turn around and go identify her body. When Rudy called me and told me she was gone I remember a chill coming over my body & a feeling of numbness going all over. It was just like a knife had been placed into my body and my heart torn out. A day that once ment [sic] so much happiness with the birth of our first child is a day now of pain. I can't even remember if my son['s] birthday cake got finished or not that day. There['s] always a certain sadness for him that day now to[o] as if he's scared to be happy because of what else it marks the day of.

"Rachel didn't deserve to die that day she was so young and had two children that she loved so much she gave he[r] own life for. She was a loving caring person who had cryed [sic] for help from being abused from [the defendant] & just like so many others never received any. And her life was taken. Her death has caused a void in all her family's life that she will never be able to fill again & her soul will never rest nor her mother's until justice is done. So by the Grace of God maybe after all these years justice will be done. And she & her mom can close there [sic] eyes in rest."

## At the defendant's sentencing hearing, Perez stated:

"My name is Brenda Perez, and I am the sister-in-law. Phil, all I've got to say is you know for years now this family went through sheer hell because of your actions. I watched a family that was once real close together be torn. You took the life of a wonderful person, and you used her kids to hold her with you, and that was unjust. It was cruel, and to this day, you still use your kid. You know, some day, some day you are going to have to meet your maker, and when that happens, I want, I'd love to be there because I want to hear you explain why. I want to hear you say why you done it. You know, Rachel was, she was going to be a nun. She went to school for that, and then she decided that she couldn't take that last vow, and so she left the school, and she married a guy some years later after she graduated out of high school with me, and she had Jennifer, and that marriage got rocky, and she met you, and we tried to talk her out of marrying you because of some circumstances, and she, she decided to marry you. But anyway, through the years, through the years several things happened, and then it ended up in her death. And now that lady, she has laid there in her grave for years, not being able to rest, knowing that the guy that killed her was out, out free. She was bonded by the grave, and you were out free. This wasn't fair. Her children had to grow up without their mom, and she could have, she could have done so much for those kids. She was a wonderful person. But yet you chose, you chose to take their mother away from them, and now you must pay. You must pay for that. You

know, if, if I was a Judge, life in prison, that's still your life. You have a life. She has no life. There's only one comfort in all of this is going to happen now. Now Rachel and her mom can finally close their eyes in peace. After all these years she can close her eyes and rest in peace, knowing that justice has been done. You know, my husband wasn't able to be here today, her brother, because of work. There is no one else to take his spot when he needs off. And I have watched him suffer, too. I have watched all his brothers suffer. His dad, he doesn't even realize what is going on every day because he is so sick. His mom, she passed away, or her mom passed away a few years back. I watched that lady cry every day for Rachel. How it broke her heart when you done what you done. And I am just sorry that, that she didn't get to see what this day came to. And you can choose to sit there and not listen if you want, or you can listen, but it really doesn't do any good to people like you anyway to stand up here and say everything we have to say because you people have no feeling. If you had any feeling, you couldn't have done what you done. But all I have got to say, if you ever get out of that jail, you better never come around our family again. When finally you do pass on from this world, may your soul rot in hell forever."

Consistent with its agreement, the State did not recommend a consecutive sentence. However, the trial court, after prior consideration of the sentencing factors in K.S.A. 21-4606, imposed a life sentence consecutive to the defendant's New Mexico sentence.

## Discussion and Analysis

The defendant argues that both the Kansas Constitution Victims' Rights Amendment and the statutory bill of rights for victims of crime, K.S.A. 74-7333 *et seq.*, represent and express a policy decision by Kansas that only the crime victim has the right to testify at sentencing although members of the family may attend. He argues that his sentence was illegal because Perez was allowed to make her statements but was not a victim nor a member of the victim's immediate family.

The Kansas Victims' Rights Amendment, art. 15, § 15 of the Kansas Constitution, states in pertinent part:

"(a) Victims of crime, as defined by law, shall be entitled to certain basic rights, including the right to be informed of and to be present at public hearings, as defined by law, of the criminal justice process, and to be heard at sentencing or any other time deemed appropriate by the court, to the extent that these rights do not interfere with the constitutional or statutory rights of the accused."

K.S.A. 1997 Supp. 74-7333(a)(5), (6), provide that the views and concerns of victims should be ascertained and appropriate assistance provided throughout the criminal process. When the interests of the victims are affected, the views or concerns of the victim should, when appropriate and consistent with criminal law and procedure, be brought to the attention of the court. The term "victim" is defined as "any person who suffers direct or threatened physical, emotional or financial harm as the result of the commission or attempted commission of a crime against such person." K.S.A. 1997 Supp. 74-7333(b). The crime victim and the victim's family, defined as the spouse, surviving spouse, children, parents, legal guardian, siblings, stepparent or grandparents, are required to be notified of the right to be present at public proceedings concerning the accused. K.S.A. 1997 Supp. 74-7335.

The purpose of the bill of rights for victims of crime is to ensure the fair and compassionate treatment of such victims. See K.S.A. 1997 Supp. 74-7333(a). In order to do so, the bill of rights ensures that victims will receive certain minimum rights. The same is true with the Victims' Rights Amendment. See Kan. Const. art. 15, § 15. The purpose of these enactments is to guarantee rights, not restrict rights.

It is true that Perez was not a "victim" as defined by K.S.A. 1997 Supp. 74-7333(b). It is also clear that she is not a member of the victim's family as defined in K.S.A. 1997 Supp. 74-7335. However, these facts make no difference as to whether she should have been allowed to submit a victim impact statement or to testify. Neither the Kansas Constitution Victims' Rights Amendment nor the statutory bill of rights for victims of crime restrict the ability of non-victim and nonfamily members to testify and submit statements during the sentencing phase of criminal proceedings in Kansas.

The crime for which the defendant was sentenced occurred in 1978. Thus, the provisions of K.S.A. 21-4601 *et seq.* apply. Under the sentencing structure as it existed prior to the Kansas Sentencing Guidelines Act, the sentencing judge was required to consider several sentencing factors in order to determine a defendant's sentence. See K.S.A. 21-4606. One of these factors was "[t]he extent of harm caused by the defendant's criminal conduct." K.S.A. 21-

4606(b)(2). Further, the sentencing judge was explicitly directed to consider a PSI report containing, among other things, the attitude of the complainant or victim and if possible in homicide cases, the victim's immediate family. See K.S.A. 21-4604(b)(2).

The sentencing judge alone determines the appropriate sentence or other disposition in each case by exercising his or her best judgment, common sense, and judicial discretion after considering all of the reports, the defendant's background, the facts of the case, the public safety, and the statutory guidelines for sentencing. *State v. Ricks*, 257 Kan. 435, 441, 894 P.2d 191 (1995). In so determining, the sentencing judge may consider all relevant facts occurring before sentencing. *State v. Hannah*, 248 Kan. 141, 145, 804 P.2d 990 (1991). The only question in this case is whether the trial court abused its discretion by admitting the statements.

The trial court was required to consider the extent of the harm committed by the defendant. Impact statements and testimony of the victim's family, both immediate and extended, may, in the judge's discretion, be relevant in making this determination. In ascertaining the extent of the harm caused by the defendant's conduct, even impact statements from nonfamily members may be relevant.

It is true that many of the statements made by Perez, both in her victim impact statement and in her statements at sentencing, were inflammatory and of little value to the judge. In *State v. Gideon*, 257 Kan. 591, 894 P.2d 850 (1995), we noted that when considering statements made to a sentencing judge as opposed to a sentencing jury, the judge could "properly determine what weight, if any, to give the statements." 257 Kan. at 605.

The same is true in the instant case. Perez' statements were submitted to a sentencing judge who could properly determine the weight, if any, to give the statements. Moreover, the record does not show that the court improperly considered these statements, nor does it show that the defendant's sentence was ordered to run consecutive to rather than concurrent with his sentence in New Mexico as a result of any passion, prejudice, or any other arbitrary consideration by the sentencing judge. We conclude that the trial

court did not abuse its discretion in admitting the statements of Perez.

Affirmed.