NOT DESIGNATED FOR PUBLICATION

No. 123,411

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES AARON ABBOTT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed December 30, 2021. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE, J., and JAMES L. BURGESS, S.J.

PER CURIAM: James Abbott pleaded guilty to aggravated indecent liberties with a child and aggravated criminal sodomy. Abbott filed a motion to depart, and the district court denied the motion and imposed concurrent hard 25 life sentences. Abbott appealed the denial of his motion, and this court remanded for resentencing. At the resentencing Abbott received the same sentence as before. Abbott again appeals the denial of his motion to depart and his sentence, arguing the prosecutor committed error at the sentencing hearing by arguing facts not in the evidentiary record and by misstating the law. We affirm.

1

In October 2018, Abbott pleaded guilty to one count each of aggravated indecent liberties with a child and aggravated criminal sodomy. Both crimes are off-grid felonies with presumptive hard 25 life sentences. The only information provided in the factual bases for the plea was the actions Abbott took against the victims, their ages, and the locations of the crimes.

Before sentencing Abbott filed a motion for departure sentence, requesting that the court depart to the Kansas Sentencing Grid. Abbott cited his lack of criminal history and acceptance of responsibility for the crimes as mitigating factors warranting departure.

At sentencing, the State presented statements from both of the victims' mothers in response to Abbott's arguments in support of a departure. One of the mothers explained that she was Abbott's sister and that Abbott babysat for her children. The district court denied Abbott's motion to depart and sentenced him to two concurrent hard 25 life sentences.

Abbot appealed his sentence, arguing that the district court impermissibly weighed aggravating factors against mitigating factors when it denied his motion to depart. *State v. Abbott*, No. 120,614, 2020 WL 1329273, at *1 (Kan. App. 2020) (unpublished opinion). A panel of this court reviewed the district court's statement on Abbott's motion to depart and found that there was substantial doubt whether it followed *State v. Jolly*, 301 Kan. 313, 342 P.3d 935 (2015), when considering Abbott's request for departure. *Abbott*, 2020 WL 1329273, at *4-5. The panel vacated Abbott's sentence and remanded the case for reconsideration of his departure motion. *Abbott*, 2020 WL 1329273, at *5.

In his first appeal, Abbott also argued that by relying on the victims' mothers' unsworn statements at sentencing, the district court relied on facts not in the evidentiary

record. The mothers' testimony provided the impact the crimes had on the victims. Since the panel was remanding the case for resentencing, it did not analyze this issue. But the panel noted that "the traumatic impact sexual abuse has on a child victim is a fact inherent in Jessica's Law" and does not require evidentiary development before being considered by the sentencing court. 2020 WL 1329273, at *5; see *Jolly*, 301 Kan. at 324 ("The sentencing judge is to consider information that reasonably might bear on the proper sentence for a particular defendant . . . . This includes those 'circumstances inherent in the crime . . . .'").

At the second sentencing hearing, the defense argued for a departure sentence based on the same mitigating factors as before. The victims' mothers did not provide updated statements at this hearing, and their original statements from the first sentencing were not offered into evidence. The State argued against departure. The district court again denied Abbott's motion for departure and sentenced him to two concurrent hard 25 life sentences. Abbott appeals his new sentence.

ANALYSIS

*Did the prosecutor commit reversible error by arguing facts not in evidence and misstating the law at resentencing?*

On appeal, Abbott argues the prosecutor committed error (1) by arguing facts not in evidence at sentencing, specifically the impact the crimes had on the victims and that Abbott was a caretaker of the victims, and (2) by misstating the law by inviting the district court to consider aggravating factors in ruling on his departure motion.

1. *Preservation*

The State argues that this issue is not preserved for appeal because Abbott did not object to the prosecutor's statement at the resentencing.

3

A contemporaneous objection must be made to all evidentiary claims to preserve the issue of prosecutorial error for appellate review. *State v. Lowery*, 308 Kan. 1183, 1195-96, 427 P.3d 865 (2018). Appellate courts may review prosecutorial error claims based on comments made during voir dire, opening statement, or closing argument even without a timely objection, but the court may figure the presence or absence of an objection into its analysis of the alleged error. *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018).

The Kansas Supreme Court has expressed no opinion whether a contemporaneous objection or other posthearing remedial motion is needed to appeal a prosecutorial error claim arising from a nonjury setting, such as the one here. *State v. Wilson*, 309 Kan. 67, 73, 431 P.3d 841 (2018) (defendant did not object to prosecutor's erroneous statements made at a hearing on a motion to correct an illegal sentence; the State waived the issue of preservation on review).

The State argues that Abbott's claims are evidentiary challenges at their core because they require the court to analyze whether evidence offered by the State could properly be considered by the sentencing court. As such, they should not be considered since they were not preserved with a contemporaneous objection.

Abbott admits he did not object to the prosecutor's comment but cites several unpublished opinions in which this court reviewed similar claims without a contemporaneous objection. Abbott asserts that even if this court requires preservation of his issue, it fits into the exception that issues raised for the first time on appeal may be heard if consideration of the issue is necessary to serve the ends of justice or to prevent the denial of fundamental rights. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

Abbott argues that not reaching the issue would leave him with no remedy for review of an improper argument implicating his rights to due process and a fair trial. He also notes that preservation is a prudential concern and asserts that before this court declines to address an issue based on a preservation exception, a reason not to address the issue must be identified.

Abbott is correct that this court has consistently reached the merits of claims of prosecutorial error at sentencing, regardless of whether an objection was made. See S*tate v. McCaughtry*, No. 117,182, 2018 WL 1659940, at \*2 (Kan. App. 2018) (unpublished opinion); *State v. Wilson*, No. 114,567, 2016 WL 7324427, at \*4 (Kan. App. 2016) (unpublished opinion), *rev. granted* 306 Kan. 1331 (2017); *State v. Serrano-Garcia*, No. 103,651, 2011 WL 4357804, at \*3-4 (Kan. App. 2011) (unpublished opinion); *State v. Roland*, No. 101,879, 2010 WL 1078454, at \*2 (Kan. App. 2010) (unpublished opinion), *rev. denied* 292 Kan. 968 (2011).

In *Roland*, Roland did not object to the prosecutor's statements at sentencing that Roland claimed violated his right to a fair sentencing hearing. The Court of Appeals noted the lack of objection and the Supreme Court's then recent decision in *State v. King*, 288 Kan. 333, 204 P.3d 585 (2009), holding that contemporaneous objections were not required for comments made during voir dire, opening statement, or closing argument because they are nonevidentiary. The court then determined that because the prosecutor's statements were not evidence and were made in the sentencing phase of the proceeding, Roland's claim could be reviewed. *Roland*, 2010 WL 1078454, at \*2.

As in *Roland*, the prosecutor's statement that is being challenged in this case was made at sentencing and was not evidence. The State says the challenge is evidentiary because it requires this court to analyze whether evidence could be considered. Abbott's challenge requires us to consider whether the statements made by the prosecutor should have been considered by the district court because a prosecutor may not argue facts

outside the evidence. *Wilson*, 309 Kan. at 78. Abbott's claim is that the comments made by the victims' mothers at the first sentencing were not before the district court in the second sentencing.

Consistent with prior decisions of this court and the analysis in *Roland*, we will address Abbott's challenge, even though he did not object at sentencing.

2. *Standard of Review*

Appellate courts use a two-step process to evaluate claims of prosecutorial error: error and prejudice. Under the first prong of the test, appellate courts determine whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. Then, if error is discovered, the State must show beyond a reasonable doubt that the error complained of did not affect the outcome of the trial in light of the entire record, i.e., there is no reasonable possibility that the error contributed to the verdict. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Prosecutorial error may occur during sentencing before a judge, and the analytical framework above applies in both the guilt and penalty phases of any trial—whether before a jury or judge. *Wilson*, 309 Kan. at 68.

The State argues this court should require the burden to be on the defendant to show that the prosecutorial error warrants reversal when a defendant does not object to the alleged error. The State asserts that this was the standard before *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), and that while the *Ward* court purported to rely on federal law, federal courts place the burden of establishing reversible error on the defendant when no objection is lodged at trial. The State asserts that this is the better rule

6

because the party benefitting from the alleged error should only have the burden of persuasion if it had the ability to correct the error at the trial court level.

The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). The Supreme Court has held that the prosecutorial error framework in *Sherman* applies to errors at sentencing and during opening or closing argument, even when no objection was lodged. *Wilson*, 309 Kan. at 68; *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018). As determined in *Sherman,* the burden is on the State to show beyond a reasonable doubt that any error did not affect the outcome of the trial in light of the entire record.

3. *Did the prosecutor commit error?*

Abbott argues the State committed prosecutorial error in its argument opposing his motion for a departure. The prosecutor's argument at the remand sentencing is below, with the statements Abbott challenges emphasized:

> ". . . Your Honor, the State would respectfully request that the Court follow its recommendations contained within the plea agreement. I would ask that the Court take judicial notice of both the Complaint and Information as well as the Affidavit of Probable Cause in this case.
> "We have two different victims, both of tender years. *This defendant's role with them was as a caregiver*. The State acknowledges that by taking responsibility he certainly did spare them the discomfort of a trial. However, that did not spare them the victimization that he put them through.
> "*The reality is, their lives are forever changed and the acceptance of responsibility, quite simple, the State would submit is insufficient to warrant a departure away from the statutory presumption that the legislature has put in place.*" (Emphases added.)

7

To resolve claims of prosecutorial error, appellate courts first determine whether the acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case. *Sherman*, 305 Kan. at 109.

    a.  *The prosecutor's statement that Abbott was a caregiver for the victims was not supported by the evidence.*

Abbott argues that it was prosecutorial error for the State to say that he was a caregiver for the victims because that fact was unsupported by the evidentiary record. It was not included in the factual basis for his guilty plea. Abbott argues that although the district court took judicial notice of the probable cause affidavit, which mentioned that he babysat one of the victims, the court did not admit the affidavit into evidence and it was not something the court could take judicial notice of under K.S.A. 60-409. Abbott, however, does not appeal the district court taking judicial notice of the probable cause affidavit and did not object to it at the remand sentencing. Abbott argues that even if the probable cause affidavit was admitted into evidence, the State still erred because it only provides that he babysat one of the two victims and it does not support that he was a caretaker of both victims as the State argued.

The State says the prosecutor did not discuss facts not in evidence because the defendant's role as a caretaker was established. The defendant's role as a caretaker of one of the victims, RAC, was established at the first sentencing when the prosecutor read a statement from RAC's mother that said Abbott babysat for RAC. The State argues that although the mother of the other victim—IMW—did not say Abbott babysat, IMW's mother described Abbott as someone who "[was] supposed to love" her child.

The State also argues that the prosecutor's request at the remand sentencing that the court take judicial notice of the probable cause affidavit was, for all practical purposes, akin to offering it into evidence, especially given that the defendant did not

8

object to the request. The probable cause affidavit mentions that Abbott committed crimes against RAC while he was babysitting, but it does not mention babysitting for IMW.

When a prosecutor argues facts not in evidence, the first prong of the prosecutorial error test is met. *Wilson*, 309 Kan. at 78. This issue generally arises from comments a prosecutor makes to a jury at closing argument. But in *Wilson*, and in several unpublished opinions, Kansas courts have analyzed whether a prosecutor committed error by stating facts not in evidence at sentencing proceedings and other nonjury settings. See *Wilson*, 309 Kan. at 78-79; *McCaughtry*, 2018 WL 1659940, at *3-4; *Roland*, 2010 WL 1078454 at *3.

Because Abbott pleaded guilty, the only facts in evidence are those he admitted during his plea hearing—what he did to the victims and their ages. At the remand sentencing the prosecutor said, "The defendant's role with [the victims] was as a caregiver." The State never presented any evidence or mention that Abbott was a caregiver for IMW. By saying that Abbott was a caregiver to the *victims*, the prosecutor stated facts not in evidence. The State notes the IMW's mother gave a statement at the first sentencing that Abbott was someone who "[was] supposed to love" IMW, but in addition to not being admitted at the remand hearing, that statement also does not show that he was her caregiver.

Because there was no evidence that Abbott was a caregiver for IMW, the State committed error by saying Abbott's role with the victims was as a caregiver. It is unnecessary to analyze whether the State could refer to information provided in the probable cause affidavit because the affidavit only provided that Abbott was a caregiver for one of the victims. It is unnecessary to discuss whether the prosecutor could rely on the victims' mothers' statements from the first sentencing since those statements only referred to Abbott as a caregiver to one of the victims.

9

b. *The prosecutor's statement that the victims' lives were forever changed was a reasonable comment on the case.*

Abbott argues the prosecutor argued facts not in evidence by saying that the victims' lives were forever changed because there was no evidence presented about their trauma. Abbott argues that in bringing up the victims' trauma, the State was arguing that the impact of the crimes outweighed Abbott's proposed mitigating factors and asserts that there must be some evidence of trauma if it is to be weighed against Abbott's acceptance of responsibility.

The State argues that there was evidence of the victims' trauma because the victims' mothers described the impact the crimes had on the victims at the first sentencing hearing. Although the mothers were not testifying under oath, the State argues that the Kansas Supreme Court has said that victim impact statements can be used by the sentencing judge in assessing the extent of the harm the defendant caused. See *State v. Parks*, 265 Kan. 644, 649, 962 P.2d 486 (1998).

Both parties discuss the decision in Abbott's first appeal in which the court noted: "[T]he traumatic impact sexual abuse has on a child victim is a fact inherent in Jessica's Law. This was not a matter that required evidentiary development before being considered by the sentencing court." *Abbott*, 2020 WL 1329273, at *5.

The State agrees with the *Abbott* court and argues this shows the prosecutor did not commit error. Abbott disagrees, arguing that a district court abuses its discretion when its decision is based on information not in evidence. Abbott argues that, if a court's decision is motivated by the trauma to the victim, there must be some evidence of what the trauma is.

10

The victims' mothers' statements were not entered into evidence at the remand hearing. Their testimony at the first sentencing was not under oath, and the State did not seek to admit affidavits or written statements that provided the impact Abbott's crimes had on the victims. The first *Abbott* court suggested that the district court could consider the impact on the victims without evidentiary development and instructed that "there is no question that the better practice is for parties to formally offer into evidence at sentencing any matter they believe the district court should consider." 2020 WL 1329273, at *5. Considering the nature of the crimes of conviction, the ages of the victims, and the severity of the crimes as evidenced by the provisions of Jessica's law, the district court could consider the impact on the victims. The prosecutor's statement was simply argument consistent with the inherent impact such crimes have on its victims. The district court was in a position to determine for itself the extent of the impact on the victims based on its own knowledge and experience.

c. *The prosecutor did not misstate the law.*

Abbott argues that the prosecutor erred by misstating the law. The Kansas Supreme Court has held that weighing aggravating factors against mitigating factors in considering a sentencing departure is verboten. *State v. Atkisson*, 308 Kan. 919, 927-928, 425 P.3d 334 (2018). Abbott contends that the State's argument invited the district court to find that an aggravating factor of the impact on the victims outweighed the mitigating factors.

The State claims the prosecutor did not invite the court to weigh aggravating and mitigating factors at sentencing, but merely argued that the mitigating factors Abbott raised were insufficient to warrant a departure. The State maintains the prosecutor's reference to the impact on the victims was a reminder that the district court should consider the facts of the case when deciding whether to depart, as was laid out in *Jolly*:

11

> "[T]he facts of the case—including any egregious ones—are essential for a judge to consider in deciding if a departure is warranted based on substantial and compelling reasons. Simply stated, a judge does not sentence in a vacuum. The sentencing judge is to consider information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed, including the manner or way in which any offender carried out the crime. This includes those 'circumstances inherent in the crime and the prescribed sentence.'" 301 Kan. at 323-24.

The State asserts that the prosecutor simply pointed to a circumstance inherent in sex crimes against children—the lifelong effect they have on the victims. The prosecutor was not inviting the court to weigh aggravating and mitigating factors or consider an inappropriate factor.

When defendants can establish that a prosecutor's statement misstated the law, then they have satisfied the first step of the prosecutorial error test, because the Kansas Supreme Court has held that misstatements of law fall outside the wide latitude afforded to prosecutors. See *State v. Phillips*, 299 Kan. 479, 504-505, 325 P.3d 1095 (2014); *State v. Taylor*, 54 Kan. App. 2d 394, 404-05, 401 P.3d 632 (2017).

The prosecutor stated: "The reality is, their lives are forever changed and the acceptance of responsibility, quite simple, the State would submit is insufficient to warrant a departure away from the statutory presumption that the legislature has put in place."

The prosecutor did not explicitly ask or invite the district court to weigh aggravating and mitigating factors. The record shows that the prosecutor simply asserted that Abbott's acceptance of responsibility was not a sufficient basis to warrant a departure. It does not appear that the prosecutor was implying the court should weigh aggravating and mitigating factors either.

12

4. *Prejudice*

While it has been determined that the State erred in its comments concerning the relationship of the victims to Abbott, a determination must be made whether Abbott was prejudiced by that error. The State has the burden to show that, beyond a reasonable doubt, the error complained of did not affect the outcome of the trial in light of the entire record, i.e., there is no reasonable possibility that the error contributed to the verdict. *Sherman*, 305 Kan. at 109.

Abbott argues that the State will not be able to meet its burden to show the error was harmless given the history of the litigation. "[A]t the first sentencing hearing, the district court was bombarded with inflammatory allegations not founded in [the] evidence. . . . At the second sentencing, the State confronted the district [court] again with information with no evidentiary support, and invited the district court to weigh aggravating circumstances against mitigating factors."

It has been determined that the State did not err when the prosecutor stated that the victims' lives were changed forever or in regard to the allegation of weighing mitigating factors against aggravating factors. The only issue to be determined is whether Abbott was prejudiced due to the prosecutor's comments on the relationship between Abbott and the victims. Although the prosecutor erred at sentencing by stating facts that were unsupported by the evidence, there is no reasonable possibility that these errors affected the district court's decision to deny Abbott's motion to depart and sentence him to two concurrent hard 25 life sentences. We affirm the district court's sentencing decision.

Affirmed.

13